Ruffin, C. J.
 

 We have but little doubt, that, in putting a construction op this contract, his Honor received it in the same sense, in which the parties themselves understood each other, when they bargained. And that we conceive to be the true principle of interpretation for mercantile, and, indeed, all other agreements.
 

 Rut it is said, first, for the defendant,, that the cotton delivered was not that contracted for., as it.did not grow on a plantation owned by the plaintiff, but grew .on one owned by him and others. We admit .the.defendant was not bound to accept 100 bales of cotton made any where in Florida. It may have been his interest in reference to the quality of the article, or, in other respects, to have the quantity bought by him taken out of a particular crop. The plaintiff was,
 
 *428
 
 therefore, under an obligation to send the cotton from the plantation which the parties call “his plantation,” in the contract; and, the question is, which was that? There seems no difficulty in ascertaining that. We find the plain- ■ tiff cultivating one plantation; and from that the cotton in question was sent; and no doubt that, and that alone, was in his view at the time. It is true that he was cultivating it in conjunction with others; but that would not, for any purpose of the transaction between the parties, prevent its being called “ his plantation.” If the defendant had shewn that the plaintiff owned, or was interested in any other plantation, or that he had said so, or that the defendant had any reason to believe so, it might be supposed the defendant did not understand this to be the crop out of which he was to be supplied. But, in the absence of all such evidence, one mus.t believe that each party had in view 100 bales of this .very crop; and, therefore, that this was
 
 his,
 
 the plaintiff's, plantation, within the sense of the contract. There is no other, to which either party could have referred.'
 

 With respect to the time of delivery, the objection of the defendant seems to be equally captious and untenable. It assumes that the plaintiff is endeavoring to excuse himself for the non-performance by himself of some part of th.e contract, upon the ground of his inability having arisen from the act of God; and then it proceeds to assert that the plaim tiff is not thereby excused for want of a provision in the agreement to meet the event that happened. But the point assumed cannot be yielded: indeed it is the very point in this cause. Before we consider whether the plaintiff has excused, or could excuse himself, for not performing th.e contract on his part, it is first to be ascertained what he did contract to do. Now, it is important, as to that, to see, ip the first place, that he did not agree to make the delivery on or before any particular day. If he had, he would have taken on himself all risks by land or on water. If no time for doing an act be specified, then the general principle is, that it must be done in convenient time, to be judged of by the court, according to the circumstances and situation of the parties, unless that be, in some respect, modified by the terms
 
 *429
 
 of the contract. Here, the delivery was to be made in Norfolk as soon as the cotton could be picked ont and shipped. What was the period thus designated, as understood by the parties? Let the sentence be divided, and the question first considered upon the words, “ as soon as it
 
 can
 
 be picked out.’V<It has not been argued, even, that those words mean, “ as soon as it can
 
 possibly
 
 and
 
 by any tivmber oj hands
 
 be picked.” The language might be absurdly strained to that sense: but no such tiling was meant. We have seen that the parties were contracting respecting part of a crop made on a certain plantation, and, when they speak of a thing to be done when that crop can be picked ont, they refer to the time, in which it will or may with ordinary diligence be picked out by the hands belonging to the plantation, and not by any, the largest number, which the proprietor could employ. In other words, the picking was to be in convenient season, according to the usual operations of agriculture. In like manner of the other' word of the sentence, “ shipped.” It follows
 
 “
 
 picked out” and is to be understood in the same sense. The plaintiff was not thereby restricted to the shortest possible time, in which, by any means, or upon any terms, he could convey the cotton to a sea-port; but, upon the principle already mentioned, he was expected to employ the usual mode of transportation, and, therefore, had a right to wait a reasonable time for an opportunity of availing himself of that mode. In fine, he had convenient time for shipping as well as for picking his cotton.
 

 Now, we think the plaintiff is under no necessity to offer an excuse for any omission on his part, for there was no such omission. The declaration truly states, that the plaintiff delivered the cotton as soon as it could be picked out and shipped, that is to say, in the true sense of the contract. For the plaintiff adopted not only the usual,but the universal mode of conveyance employed in his part of the country; and he did so as early as he could, and at an extraordinary expense. We see no reason, therefore, why the defendant was not obliged to accept the cotton tendered, and consequently, the verdict and judgment were right.
 

 Per Curiam, Judgment affirmed.