462 P.2d 836

**James BIDDLE and Joan Biddle, husband and wife, Appellants,**

v.

**Harry GIRARD and Don L. Calvert, Co-Partners, Appellees.**

**No. 1 CA–CIV 881.**

Court of Appeals of Arizona, Division 1.

Department A.

Dec. 31, 1969.

Leonard S. Sharman, Sedona, for appellants.

Mangum, Wall & Stoops, by Daniel J. Stoops, Flagstaff, for appellees.

CAMERON, Judge.

This is an appeal from a judgment of the trial court sitting without a jury in favor of the defendants, Harry Girard and Don Calvert. We are called upon to determine whether the evidence supports the trial court's decision that a portion of the indebtedness sued upon was a future debt to become absolute upon the happening of a future contingency.

The facts necessary for a determination of this matter on appeal are as follows. The defendants, Girard and Calvert, were co-partners in a business known as Tranquil Waters Nursery and Floral. The defendant Calvert owned a floral business in Cottonwood, Arizona, and the property in question, which was located in Sedona, Arizona, was owned by the defendant Girard. Prior to 1 April 1965, the plaintiff, James Biddle, discussed with the defendants the possibility of investing in the business as well as acting as manager. Pursuant to these discussions James Biddle paid to the defendants the amount of $5,000 and became the manager of the business for an 11-month period during which time he made draws for himself in the amount of $2,350 plus other items of benefit. After he left the business the defendants Girard and Calvert agreed to dissolve their partnership.

Although it is agreed that the parties did not intend that plaintiff would become a part of the partnership, the testimony is confused as to the agreement between plaintiff and the partnership concerning the

$5,000 advance. The testimony of defendant Calvert is in part as follows:

"Q And if what was accumulated  *  * Say that Mr. Girard decided to shut down the greenhouse, was there any discussion as to how Mr. Biddle would be repaid if he shut down the business or shut down the greenhouse?

"A Yes, there was a discussion about that because Mr. Girard brought up the fact that—he said, 'What if the business fails,' and he said, 'Well, that's a chance I'll have to take but I'm a good manager and I've been in the business before and I think that I can take care of it.'

"Q Well, was there any time discussed as to how long this business would attempt to keep going till it was determined whether it was a going business or not?

"A No, but it wasn't—after approximately a year, it was not a going business."

Defendant Girard testified in part as follows:

"Q And this $5,000 was a loan to you and Mr. Calvert as partners in this business, was it not, by Mr. Biddle?

"A No, it was not a loan.

"Q You and Mr. Calvert agreed to repay Mr. Biddle this money, did you not?

"A There was an agreement, an oral agreement, that Mr. Biddle would receive—would be refunded his $5,000 at such time as the business was able to do so.

> *      *      *      *      *

"Q Well, to follow that a step further, was it contemplated by you and Mr. Calvert that if the business wasn't successful, that this money would never be repaid to Mr. Biddle?

"A It was, yes."

And plaintiff James Biddle stated as follows:

"Q Will you tell the Court what was said by them, if anything, or what was said by you at these first two meetings as to when and where and how you would be paid back the $5,000 loan?

"A Well, a reasonable length of time. At least within a year is a reasonable length of time, and now—

"Q Was the period of a year ever mentioned in this conversation?

"A Yes, it was.

"Q Are you just assuming it?

"A No, it was mentioned.

"Q By whom?

"A By—all of us agreed that a man, if he makes an investment, has to realize—it was going to be a non-interest loan drawn up so there would be no interest involved, so that at least they would pay it back within a reasonable length of time which would be a year. That's—"

Plaintiff sued for the amount of $5,000 plus other amounts for salary and use of his automobile. The trial court was not requested to make findings of fact or conclusions of law. We have stated:

" *  *  * [S]ince findings of fact and conclusions of law were not requested, made or stated, this Court must 'view the record as though the trial court had found every controverted issue of fact necessary to support the judgment', Gabitzsch v. Cole, 95 Ariz. 15, 17, 386 P.2d 23, 24 (1963), 'and, if there is reasonable evidence to support such findings, hold that it did so correctly.' Silva v. De Mund, 81 Ariz. 47, 50, 299 P.2d 638, 640 (1956). In addition, 'all inferences supported by the evidence will be taken in favor of appellee.' Rosen v. Hadden, 81 Ariz. 194, 196, 303 P.2d 267, 268 (1956)." Contractor & Min. Serv. & S. Inc. v. H & M Tractor & B. Corp., 4 Ariz.App. 29, 31, 417 P.2d 542, 544 (1966).

It is the position of the appellants that this is a straight loan and that inasmuch as there was no time limit on the loan that it should be repaid within a reasonable length of time and they cite law to that effect. Carrick v. Sturtevant, 28 Ariz. 5, 234 P. 1080 (1925), Corbin on Contracts, Vol. 1, § 96.

"* * * If the existence of the debt is conditional upon the happening of a contingency, payment, of course, cannot be enforced until the contingency happens. On the contrary, if a debt was in fact created and an absolute liability arose, payment of which was to be made upon the happening of an event which does not happen, the law requires payment to be made within a reasonable time. * * *" Greenstreet v. Cheatum, 99 Kan. 290, 161 P. 596, 597 (1916).

We have no quarrel with the law cited by the appellant (and see also Zancanaro v. Cross Plumbing & Heating Co., 85 Ariz. 394, 339 P.2d 746 [1959]), but we feel from the transcript that there is sufficient evidence from which the trial court could find that the parties did not intend to create a loan or absolute liability, but on the contrary, intended to create a debt conditioned upon the happening of a contingency, and that plaintiff was to receive no money if the business failed.

The evidence is sufficient to find that James Biddle merely contributed $5,000 in the hope that the business would become successful. The business did not become successful and had to be dissolved. There is no question of bad faith on the part of the partnership as to the termination of the business and since there was never a successful business, Mr. Biddle has unfortunately lost his money.

Judgment affirmed.

DONOFRIO, P. J., and JACOBSON, J., concur.